### CHARLES BASSETT & another *vs.* MARY F. PERCIVAL.

If money has been paid for the good will of a business, with an agreement by the vendor to endeavor to induce his customers to patronize the purchaser, proof that after the lapse of over a year the vendor again engaged in a similar business in the vicinity will not sustain an action to recover back the money so paid. The remedy, if any, is by an action on the contract for damages.

A bill of sale of a stock of goods in a store and "the good will of the vendor's trade and all the advantages connected with the store" does not import an agreement by the vendor not to engage again in a similar business; and parol evidence is incompetent to prove such an agreement, as a part of the consideration for the price named in the bill of sale.

CONTRACT against the executrix of the estate of Thomas Percival, Jr., to recover $600, money had and received by her testator to the plaintiff's use.

A trial by jury was waived in the superior court, and at the

hearing, before *Brigham*, J., the following facts appeared: On the 19th of January 1860 the plaintiffs purchased of Thomas Percival, Jr. all the stock of groceries and other articles in the grocery store then occupied by him at No. 763 Tremont Street, Boston, taking a bill of sale thereof and of " the good will of my trade, and all the advantages connected with said store," for the consideration of $2038.91. The stock was valued at $1438.91, and the good will at $600. The plaintiffs took immediate possession and carried on the business until May 25th 1860, when Charles Bassett retired, leaving Henry Otis, the other plaintiff, who either alone or in partnership with Cyrus Thatcher has carried on the business ever since. On the 1st of March 1861, Percival opened a grocery store at No. 760 Tremont Street, and continued to carry on the business until April 23d 1861, when he sold out. It further appeared, though the facts were ruled to be immaterial, that at the time of the plaintiffs' purchase Percival orally agreed " that the plaintiffs had bought his trade, and to influence his former customers to patronize the plaintiffs, at store No. 763."

Upon these facts, the judge ruled that the plaintiffs were not entitled to recover, and ordered judgment for the defendant. The plaintiffs alleged exceptions.

*J. Nickerson*, for the plaintiffs.

*A. C. Clark*, for the defendant, was not called upon.

BIGELOW, C. J. We are at a loss to see how this action can be maintained by the plaintiffs in their joint names, on the facts in proof. It appears that one of them retired from business in the month of June 1860, long before any act was done by the defendant's testator which, by any construction of the contract, could be held to be a breach of his agreement for the sale of the good will of his trade. This retiring copartner certainly can have no claim to recover back any part of the consideration paid for a contract of which he has enjoyed the benefit, and of which there was no breach until long after his interest in the business had ceased, and when no damages could accrue to him by any violation of the agreement.

But however this may be, we are of opinion that there are

two decisive objections against the right of the plaintiffs either separately or jointly to maintain this action. The first is, assuming that there was such an agreement for the sale of the good will as would prevent the defendant's testator from again engaging in business, the evidence shows no such failure of the alleged consideration for such agreement as will support an action to recover back the money paid therefor. The agreement was performed for upwards of one year, during which the deceased did no act which could be construed into any breach of his contract. For this period there was an enjoyment by the plaintiffs of the benefit of the agreement. Such being the case, they cannot now claim that the consideration has failed *in toto* and recover it back in this action. Their remedy for a subsequent breach and a partial failure of the consideration is by an action for damages. *Miner* v. *Bradley*, 22 Pick. 457.

The other objection is equally decisive. The parties having reduced their contract to writing, their rights under it must depend on the true interpretation of its terms, irrespective of any parol evidence of what took place previously to or at the time of the making of the agreement. Looking only at the written contract, we are unable to see any clause which can be construed into an agreement by the defendant's testator to refrain from engaging in a similar business to that which he sold to the plaintiffs. There was no express agreement to that effect, nor can any be implied from that clause of the bill of sale by which the vendor conveys the good will of his trade and all the advantages connected with the store and premises. It was nothing more than a sale of the custom or trade which appertained to the place where the vendor was then carrying on his business. This was the real subject matter of the contract between the parties, and it cannot be construed as imposing any personal restraint on the vendor, or as restricting his right to transact a similar business in another place at a subsequent time. Whenever such is the intent of the parties, it is carried into effect by an express stipulation, which, if not in undue restraint of trade, may be valid and binding. But we know of no case where any such agreement has been raised by mere implication, arising

from the sale of the good will of a person's trade, in connection with a particular place of business where it has been carried on.

*Exceptions overruled.*